UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA

       - against -

OCTAVIA TELFAIR,

              Defendant.
-----------------------------------------------------------x

MEMORANDUM AND ORDER
19-CR-270

GLASSER, Senior United States District Judge:

On December 18, 2019, defendant Octavia Telfair moved (1) to dismiss the indictment for failure to state an offense; and (2) to suppress her post-arrest statements. (ECF No. 24, "Def.'s Br."). For the reasons that follow, her motions are **DENIED**.

## BACKGROUND

Telfair is charged in a one-count indictment with transmitting threats to injure Jane Doe in violation of 18 U.S.C. § 875(c). (ECF No. 9). The government alleges that on April 24, 2019, Telfair made numerous threatening phone calls to Jane Doe, who had recently testified against Telfair's brother in a criminal proceeding. (ECF No. 1, "Compl." ¶¶ 2–3). Jane Doe recorded at least two of those calls. (*Id.* ¶ 4). In the first recording, Telfair screams that Jane Doe is "gonna die," and that she was "going to have to live with a 'rearranged face.'" (*Id.*). Telfair states that she will find where Jane Doe lives, that her family is "food," and that Telfair will "kill all of y'all bitches." (*Id.*). Telfair even suggests that she is willing "to sit there with him," presumably referring to her incarcerated brother. (*Id.*). In the second call, Telfair warns Jane Doe she is "on a mission," telling her: "Fuck your kids, bitch. They can die too. Die, kids, die." (*Id.* ¶ 5). Around this time, Telfair called Jane Doe's minor son who disclosed his location. (*Id.* ¶ 6).

Telfair was arrested on May 20, 2019, after fleeing from law enforcement officers. (ECF No. 31, "Gov't Br." at 2). Once handcuffed, she was taken to a nearby hospital to treat injuries

sustained during the arrest. (*Id.*). When officers did not provide her with information regarding the purpose of the arrest, she stated, without provocation, "it's about an argument with my brother's wife," and "I got into it with that heifer on the phone." (*Id.* at 2–3). After receiving treatment, Telfair was taken to an FBI office for processing. (*Id.* at 3). The arresting officers informed her that *Miranda* rights would be given "when we start talking to you," which Telfair apparently understood. (*Id.*). After being advised of her rights, Telfair requested a lawyer and the officers ceased questioning. (*Id.*). She was indicted on June 17, 2019. (*Id.*).

## LEGAL STANDARD

Among the motions that must be raised prior to trial, Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure provides for the dismissal of an indictment for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). The law is clear that an indictment should not be dismissed so long as it "track[s] the language of the statute charged and state[s] the time and place (in approximate terms) of the alleged crime." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (citation omitted). Motions to suppress must also be made prior to trial. Fed. R. Crim. P. 12(b)(3)(C). When moving to suppress, a defendant is "not automatically entitled to an evidentiary hearing," though the Court may order one in its discretion. *United States v. Harun*, 232 F. Supp. 3d 282, 285 (E.D.N.Y. 2017). No hearing is required "if a defendant fails to support his factual allegations with an affidavit from a witness with personal knowledge." *Id.*

## DISCUSSION

### I.     Motion to Dismiss Indictment

Telfair's motion to dismiss is denied. An indictment withstands dismissal so long as it tracks the language of the statute charged. *Stringer*, 730 F.3d at 124. Here, the indictment tracks the language of § 875(c), including the time and place of the offending conduct. Accordingly, the indictment fairly informs Telfair of the alleged crime.

2

Telfair's contention that her speech was protected under the First Amendment is without merit.  (*See* Def.'s Br. ¶ 10).  As is well established, "free speech is not absolute."  *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942).  For example, the Second Circuit has upheld the Constitutionality of 18 U.S.C. § 875(c), finding true threats unprotected by the First Amendment.  *United States v. Kelner*, 534 F.2d 1020, 1027 (2d Cir. 1976).  *Kelner* explains that, "so long as the threat on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution, the statute may properly be applied."  *Id.*

Recordings of Telfair's calls leave little doubt that a jury could find her guilty of the charged crime.  *Id.*; *see also United States v. Turner*, 720 F.3d 411, 423–24 (2d Cir. 2013) (applying broader standard).  Telfair used specific language in threatening Jane Doe with death and bodily harm, she insisted she was willing to bear consequences for her actions, and she located Jane Doe's minor son.  A jury may reasonably find that Telfair was not merely "ranting and raving," but that she threatened Jane Doe in violation of § 875(c).

## II.     Motion to Suppress

Telfair's motion to suppress her post-arrest statements is also denied.  She argues that suppression is warranted because she was not immediately read *Miranda* rights and, at some point, she made unsolicited comments regarding the purpose of her arrest.  (*See* Def.'s Br. ¶¶ 12–13; *see also* Gov't Br. 10–13).  While Telfair is correct that *Miranda* is intended to protect the Fifth Amendment privilege against self-incrimination, it only does so in the context of custodial interrogation.  *Isasi v. Herbert*, 176 F. App'x 143, 144 (2d Cir. 2006) ("Even if a suspect is in custody, the police are required to administer *Miranda* warnings only when the police engage in interrogation or its 'functional equivalent,' i.e., 'express questioning, [as well as] . . . any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an

incriminating response from the suspect.'"  (quoting *Rhode Island v. Innis*, 446 U.S. 291, 292 (1980))).  Here, although she was in custody, Telfair was not interrogated before *Miranda* rights were given, nor does she contend as much.[1]  Moreover, the recording of her detention shows that once *Miranda* rights were read—and she requested an attorney—the officers ceased questioning.

## CONCLUSION

For the reasons set forth above, Telfair's motions are **DENIED** without a hearing.

SO ORDERED.

Dated:        Brooklyn, New York
               February 3, 2020

/s/
I. Leo Glasser                                              U.S.D.J.

---

[1] Only her counsel states that Telfair's comment was "allegedly made in response to questioning by law enforcement officers after her arrest."  (Def.'s Br. ¶ 12).  No facts are provided.